IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DOUG RUBY, Ph.D.,

       Plaintiff,

vs.                                                                No. CIV 09-0762 JB/WDS

SANDIA CORPORATION, a foreign
Corporation doing business in New Mexico,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed August 5, 2009 (Doc. 3); and (ii) the Plaintiff's Motion to Remand, filed August 31, 2009 (Doc. 13). The Court held a hearing on December 28, 2009. The primary issues are: (i) whether Defendant Sandia Corporation ("Sandia Labs") has established a right to remove Plaintiff Doug Ruby's four state claims to federal court by showing that § 502 of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA") completely preempts some or all of Ruby's claims; (ii) whether the Court should convert Ruby's state-law claims into federal claims under ERISA's civil-enforcement provisions; and (iii) whether the Court should permit Ruby to amend his Complaint to add additional state and/or federal claims. Because the Court finds that Ruby's claims under the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 through 28-2-15 ("NMHRA"), for age discrimination and retaliation are based on independent legal duties separate from those ERISA creates, the Court will not convert those claims into federal ERISA claims. Because the Court finds that ERISA completely preempts Ruby's claims for wrongful termination and prima-facie tort, the Court will convert those claims into a federal

claim under ERISA's civil enforcement provisions.  Because complete preemption by ERISA converts the state-law claims into a federal claim upon which relief can be granted, the Court denies Sandia Labs' motion to dismiss and will grant Ruby leave to amend his Complaint to properly plead his preempted state-law claims as a claim under ERISA's civil enforcement provision.  Because both parties have requested that the Court maintain supplemental jurisdiction if the Court finds complete preemption for some of the claims, the Court will deny the Plaintiff's motion to remand.  The Court will also grant Ruby leave to amend his Complaint to add additional state and/or federal claims.

## FACTUAL BACKGROUND

For purposes of resolving a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pled facts as true.  Accordingly, the Court has relied on Ruby's Complaint in outlining the facts pertinent to this motion.  Sandia Corporation operates the Sandia National Laboratories, a federally owned research facility in Bernalillo County, New Mexico.  See Complaint for Damages Arising Under the New Mexico Human Rights Act and New Mexico Common Law ¶ 4, at 4, filed August 5, 2009 (Doc. 1-2)("Complaint").  Ruby, a physicist, accepted employment with Sandia Labs in November 1985.  See Complaint ¶ 7, at 4.  In 1989, Ruby was promoted to Senior Member of the Technical Staff ("SMTS"), and in 1999, he was promoted to Principal Member of the Technical Staff ("PMTS").  See Complaint ¶¶ 9, 11, at 4.  In early 2004, Sandia Labs brought in a new manager, Dr. Jeffrey Nelson, who was assigned as Ruby's supervisor.  See Complaint ¶¶ 16, 17, at 5.

At the time Nelson was hired, Ruby's retirement benefits were close to vesting.  See Complaint ¶ 18, at 5.  On May 16, 2007, Nelson informed Ruby that he could accept placement

on a Performance Improvement Plan ("PIP")[1] or be terminated from his employment. See Complaint ¶ 21, at 5.[2] Ruby accepted the PIP, and was given tasks such as developing a comprehensive research program for accelerated aging of Thin-Film materials, devices, and systems and developing a concentrating photovoltaic systems research program within sixty days.[3] Ruby did not meet the tasks and was demoted to SMTS in September 2007. See Complaint ¶ 30, at 6. Ruby was placed on another PIP as a SMTS. See Complaint ¶ 33, at 7. Ruby set goals and work assignments for himself, which were Nelson approved, and submitted a twenty-page report to Sandia Labs management documenting his accomplishments and describing how he satisfied the goals set pursuant to the second PIP. See Complaint ¶¶ 35-38, at 7. Ruby subsequently received a letter stating that he had not satisfied the goals under the second PIP. See Complaint ¶ 39, at 7. Sandia Labs terminated Ruby's employment on January 28, 2008, citing the failure to meet the second PIP as the grounds for termination. See Complaint ¶ 41, at 7.[4] As a result of his termination, Ruby filed a complaint with the New Mexico Human Rights Commission ("NMHRC") pursuant to the

---

[1] A PIP is a probationary work plan for Sandia Labs employees intended to remedy poor work performance, and requires the employee to meet a series of goals and/or tasks. See Complaint ¶ 22, at 6.

[2] Ruby's Complaint also alleges that Nelson engaged in a series of actions "to create a pretext for firing Dr. Ruby" and that Nelson did so "to prevent Dr. Ruby from obtaining his retirement benefits which would in turn save Sandia Labs a significant amount of money. Were Dr. Ruby not an older long-term employee he would have not have been the subject of such wrongful actions." Complaint ¶¶ 19, 20, at 5.

[3] Ruby contends that he was not given sufficient financial resources, manpower, or time to accomplish his tasks. See Complaint ¶ 28, at 6.

[4] Ruby contends that younger workers who performed unsatisfactorily were: (i) not placed on a PIP, but instead were reassigned to work elsewhere within Sandia Labs; or (ii) if they were put on a PIP and failed to meet it, that they were reassigned rather than terminated. See Complaint ¶ 44, at 8.

NMHRA.  See Complaint ¶ 45, at 8.  The NMHRC, in its finding of probable cause, determined that Ruby attempted to meet his PIP requirements, that evidence showed that a younger female employee who was having employment issues was allowed to transfer to another department and Ruby was not offered the same option, and that there was sufficient evidence to believe discrimination occurred.  See Complaint ¶ 47, at 8.

## PROCEDURAL BACKGROUND

On July 2, 2009, after the NMHRC found sufficient evidence to believe that discrimination had occurred, Ruby filed a Complaint against Sandia Labs in the Second Judicial District Court of Bernalillo County, New Mexico, alleging that Sandia Labs wrongfully discriminated against him based on his age, in contravention of the NMHRA, and engaged in conduct that constituted the common-law torts of wrongful termination and prima-facie tort.  See Complaint ¶¶ 59, 68, 74, 76-78, at 9-11.  In his Complaint, Ruby raised these causes of actions predicated on the averments that Sandia Labs treated him differently than younger employees to save money and that, but for his age, Sandia Labs would not have treated him unfairly.  See Complaint ¶¶ 20, 59, 67 at 5, 9, 10.  Ruby alleges that he "was treated less favorably by Sandia management than other younger employees with respect to employment decisions because of his age."  Complaint ¶ 59, at 9.

On August 8, 2009, Sandia Labs filed a Notice of Removal.  See Doc. 1.  Sandia Labs also filed its motion to dismiss contemporaneously with its Notice of Removal.  See Doc. 3.  Both Sandia Labs' Notice of Removal and its motion to dismiss are predicated solely on the argument that ERISA preempts Ruby's state-law claims.  In its motion to dismiss, Sandia Labs argues that the Court should grant its motion because all of Ruby's claims relate to an employee-benefit plan which ERISA governs, seek benefits which that plan provides, and are, therefore, completely preempted by § 502 of ERISA.  Specifically, Sandia Labs argues that Ruby's Complaint does not allege any

other motive for Sandia Labs' alleged wrongful termination of his employment other than preventing Ruby from receiving a full retirement service pension.  See Motion at 2.  Sandia Labs relies on: (i) the provision in ERISA which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title," ERISA § 514, 29 U.S.C. § 1144(a); and (ii) on the Supreme Court of the United States' holding in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990), in which the Supreme Court held that ERISA preempted the state claims of an employee who had lost his job and sued in state court under various tort and contract theories based on the allegation that the principal reason for his termination was that his pension benefits vested in another four months, were preempted by ERISA.  Sandia Labs argues that, because ERISA preempts all four of Ruby's claims, the Court should dismiss them with leave to amend the state claims into an ERISA claim.  See Motion at 7.

On August 31, 2009, Ruby filed his response to Sandia Labs' motion to dismiss. See Plaintiff Doug Ruby's Response to Defendant Sandia Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed August 31, 2009 (Doc. 12)("Response to Motion to Dismiss").  In his response, Ruby argues that ERISA does not preempt his state-law claims.  Ruby relies on the provision in ERISA which states that nothing in ERISA is to be construed so as to "alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law," ERISA § 502(d), 29 U.S.C. § 1144(d), and the Supreme Court's holding in Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983).  Ruby contends that the Supreme Court's holding in Shaw v. Delta Air Lines, Inc. makes clear that state human rights laws are preempted with respect to ERISA benefit plans only insofar as they prohibit practices that are lawful under federal law.  Ruby argues that, because the NMHRA's age discrimination provisions are co-extensive with

the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 through 634 ("ADEA"), a finding

of ERISA preemption as to Ruby's claims for age discrimination would both "modify" and "impair"

the enforcement of rights under the ADEA, and because Ruby seeks to vindicate rights that the

ADEA promotes, even though he brought his claims through state-law causes of action, ERISA does

not preempt his claims.  See Response to Motion to Dismiss at 6.  Ruby also contends that his claims

do not relate to any employee-benefit plan the ERISA preemption provision contemplates.  Ruby

argues that Ingersoll-Rand Co. v. McClendon does not apply, because he has asserted claims

predicated on laws prohibiting age discrimination, which he contends are laws of general

applicability and not dependant on an ERISA plan.  See Response to Motion to Dismiss at 14.  Ruby

contends that his claims have only an incidental impact on any ERISA plan and that such a tenuous

connection is insufficient grounds to support a claim of preemption.  See Response to Motion to

Dismiss at 20.

    In its reply to Ruby's response to the motion to dismiss, Sandia Labs makes a distinction

between express preemption and complete preemption.  See Defendant Sandia Corporation's Reply

to Plaintiff Doug Ruby's Response to Defendant Sandia Corporation's Motion to Dismiss Pursuant

to Fed. R. Civ. P. 12(b)(6), filed September 24, 2009 (Doc. 16)("Reply to Motion to Dismiss").

Sandia Labs argues that the "courts have recognized two types of preemption under ERISA:

(1) express preemption under § 1144(a), which occurs when a law 'relates to' an employee benefit

plan governed by ERISA; and (2) complete preemption, which occurs when the allegations in the

complaint give rise to an ERISA cause of action."  Reply to Motion to Dismiss at 2.  Sandia Labs

argues that complete preemption applies to Ruby's four state-law claims.  Sandia Labs also argues

that Ruby's reliance on Shaw v. Delta Air Lines, Inc. is misplaced, because it addressed express

preemption, not complete preemption, and because the plaintiff in Shaw v. Delta Air Lines, Inc. was

not asserting a claim based upon alleged conduct that ERISA expressly prohibits, as Sandia Labs contends is the case in the matter before the Court.

Ruby has also filed a motion to remand, requesting that the Court enter an order remanding the case to state court.  <u>See</u> Motion to Remand, filed August 31, 2009 (Doc. 13).  In the motion to remand, Ruby argued that, because Sandia Labs' notice of removal is predicated solely on ERISA preemption, and because Ruby contends that ERISA does not preempt his claims, that the Court does not have jurisdiction.  <u>See</u> Motion to Remand at 3.  In Sandia Labs' response, it argues that removal was not only proper, but essential, because ERISA completely preempts Ruby's claims, and because Congress vests exclusive jurisdiction over ERISA violations in federal court. <u>See</u> Defendant Sandia Corporation's Response to Plaintiff's Motion to Remand, filed September 24, 2009 (Doc. 18).

In his reply to the motion to remand, Ruby addressed the arguments that Sandia Labs raised in its reply to the motion to dismiss.  <u>See</u> Plaintiff Doug Ruby's Reply to Defendant Sandia Corporation's Response to Plaintiff's Motion to Remand at 2 n.1, filed October 19, 2009 (Doc. 21) ("Reply to Motion to Remand").  Ruby argued that his state-law age-discrimination claims do not fall within the ambit of § 502's civil-enforcement provision.  <u>See</u> Reply to Motion to Remand at 4-5. Ruby also argues that, even if his claims are viable under § 502, complete preemption does not apply because his claims arise from an independent legal duty.  <u>See</u> Reply to Motion to Remand at 7. Ruby argues that his claims stem solely from the NMHRA, which prohibits an employer from discharging an employee based on his age, <u>see</u> NMSA 1978, § 28-1-7, unlike § 510 of ERISA, which makes it "unlawful . . . to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan,"  Reply to Motion to Remand at 8.

At the hearing, Matthew L. Garcia, Ruby's counsel, conceded that Ruby has alleged that part of the reason Sandia Labs terminated Ruby was in an effort to save money, "including denying Dr. Ruby retirement benefits."  Transcript of Hearing at 4:5-7 (taken December 28, 2009)(Garcia) ("Tr.").[5]  He argued, however, that Sandia Labs also had discriminatory motives on the basis of age and retaliatory motives.  See Tr. at 3:10-20 (Garcia)(stating that, "but for [Ruby's] age, he would not have been treated unfairly."); id. at 30:12-14 (Garcia)("[The Complaint] tells a story about age discrimination, it tells a story about retaliation, and it tells a story about termination of an employee in order to save money.").  Mr. Garcia contended that Ruby's claims do not meet both prongs of the test for § 502's complete preemption.  See Tr. at 7:24-8:1 (Garcia).  He argued that Sandia Labs' actions implicated an independent legal duty, and therefore complete preemption is not applicable. See Tr. at 8:8-12 (Garcia).  Mr. Garcia conceded that, if ERISA preempts any of Ruby's claims, § 502 most likely preempts the claims for wrongful termination and prima-facie tort.  See Tr. at 8:23-9:1 (Garcia).  He asserted that, if the Court finds that ERISA preempts some claims, the Court should still permit Ruby to keep his state NMHRA claims, and that Ruby would like the Court to exercise supplemental jurisdiction over all of the claims, rather than send some claims to state court while retaining the claims that the Court finds ERISA preempts.  See Tr. at 10:10-12 (Garcia).

Luis G. Stelzner, Sandia Labs' counsel, stated at the hearing that Sandia Labs cannot assert jurisdiction under § 514 express preemption in this case.  See Tr. at 16:8-11 (Stelzner).  Mr. Stelzner explained, however, that Ruby's claims fall within the scope of § 514 because he is a participant in Sandia Labs' benefits plan and the Complaint alleges that Sandia Labs interfered with the attainment of his benefits.  See Tr. at 22:5-14 (Stelzner).   He also argues that Ruby's claims fall within the

---

[5] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

scope of § 502's civil-enforcement provision.  See Tr. at 22:22-23:9 (Stelzner).

Mr. Stelzner conceded that, if Ruby's Complaint had not mentioned his retirement benefits, his claims would not have triggered ERISA preemption.  See Tr. at 19:2-13 (Court, Stelzner).  He argued, however, that the sole motive alleged in Ruby's Complaint is Sandia Labs' desire to save money by denying Ruby retirement benefits and that, although Mr. Garcia argued that Ruby was terminated because of discriminatory motives on the basis of age, such a motive was not pled in the Complaint.  See Tr. at 20:10-14 (Stelzner); id. at 23:23-25 (Stelzner).  He also argued that, as pled, Ruby's claims cannot be brought based on an independent legal duty, because he only pled a benefits-defeating motive, which ERISA exclusively covers.  See Tr. at 27:11-25 (Stelzner).  Like Mr. Garcia, Mr. Stelzner also expressed a strong preference that, if the Court finds that ERISA preempts only some claims, the Court should exercise supplemental jurisdiction over all of the claims.  See Tr. at 25:24-26:12 (Stelzner).

## LAW REGARDING MOTIONS TO DISMISS

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual

allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (internal citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1967, 1969).  "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1974)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.   The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S Ct. at 1974)(internal citations omitted).

## LAW REGARDING REMOVAL

A civil action filed in a state court may be removed to federal court if the claim arises under

federal law.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); 28 U.S.C. §1441(a).  "To

determine whether the claim arises under federal law, [the court] examines the 'well pleaded'

allegations of the complaint and ignore[s] potential defenses[.]"  Beneficial Nat'l Bank v. Anderson,

539 U.S. at 6.  "The [well-pleaded-complaint] rule makes the plaintiff the master of the claim; he

or she may avoid federal jurisdiction by exclusive reliance on state law."  Caterpillar Inc. v.

Williams, 482 U.S. 386, 392 (1987).  "As a general rule, absent diversity jurisdiction, a case will

not be removable if the complaint does not affirmatively allege a federal claim."  Beneficial Nat'l

Bank v. Anderson, 539 U.S. at 6.

A defense that relies on a federal statute's preemptive effect will not provide a basis of

removal.  See Caterpillar Inc. v. Williams, 482 U.S. at 393 ("[A] case may not be removed to federal

court on the basis of . . . the defense of pre-emption . . . .").  In Franchise Tax Board of California

v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1 (1983), the Supreme

Court stated:

> [A] federal court does not have original jurisdiction over a case in which the
> complaint presents a state-law cause of action, but also asserts that federal law
> deprives the defendant of a defense he may raise, . . . or that a federal defense the
> defendant may raise is not sufficient to defeat the claim.

463 U.S. at 10.

A state claim may be removed to federal court in only two circumstances -- when Congress

expressly so provides, or when a federal statute wholly displaces the state-law cause of action

through complete preemption.[6]  See Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8.  "When the

federal statute completely pre-empts the state-law cause of action, a claim which comes within the

---

[6] A state claim can also be removed using supplemental jurisdiction, provided that another
claim in the complaint is removable.  See 28 U.S.C. § 1367(a).

scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8.  The Supreme Court has recognized complete preemption as to three federal laws: (i) the Labor Management Relations Act, 29 U.S.C. § 185, see Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968); (ii) the National Bank Act, see Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8; and ERISA, see Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).

## LAW REGARDING ERISA PREEMPTION

ERISA provides a uniform regulatory regime over employee-benefit plans and includes expansive preemption provisions which are intended to ensure that employee-benefit-plan regulation would be "exclusively a federal concern."  Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981).  See 29 U.S.C. § 1144 (§ 514 of ERISA).  Congress "expressly included a broadly worded pre-emption provision" in ERISA.  Ingersoll-Rand Co. v. McClendon, 498 U.S. at 138.  See Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1263 (10th Cir. 1988)("The scope of ERISA preemption . . . is very broad.").  The United States Court of Appeals for the Tenth Circuit has explained that "[i]mportant to understanding the propriety of removing [a case] is the distinction between 'conflict preemption' under § 514 of ERISA and 'complete preemption' under § 502 of ERISA."  Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1153 (10th Cir. 2004).

1.      **Express Preemption.**

Section 514 of ERISA, 29 U.S.C. § 1144, contains an express-preemption provision which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers.  29 U.S.C. § 1144(a).  The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'"  Egelhoff v.

-12-

Egelhoff, 532 U.S. 141, 146 (2001). The Supreme Court has explained: "The key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language . . . ." Ingersoll-Rand Co. v. McClendon, 498 U.S. at 138.  "But at the same time, [the Supreme Court has] recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'" Egelhoff v. Egelhoff, 532 U.S. at 146  (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)).

The Supreme Court has held that a state law "relates to" an ERISA plan, and is thus expressly preempted under § 514, "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. at 97.  Additionally, the Court has

> cautioned against an uncritical literalism that would make pre-emption turn on infinite connections. Instead, to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.

Egelhoff v. Egelhoff, 532 U.S. at 147 (quotations and citations omitted).

The ERISA express-preemption provision does not apply "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.1 (1992) (quotations and citations omitted). See Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078, 1084 (10th Cir. 1994)(en banc).

2.      **Complete Preemption.**

The complete-preemption doctrine allows the removal of state actions that fall within the scope of § 502(a), 29 U.S.C. § 1132, ERISA's civil-enforcement provision.  Section 502(a)(1) provides a cause of action to any plan beneficiary or participant "to recover benefits due to him

under the terms of [a pension] plan, to enforce his rights under the terms of the plan, or to clarify

rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a).  "[T]he preemptive force

of § 502(a) of ERISA is so 'extraordinary' that it converts a state claim into a federal claim for

purposes of removal and the well-pleaded complaint rule."  Felix v. Lucent Techs., Inc., 387 F.3d

at 1156 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)).

In Metropolitan Life Insurance Co. v. Taylor, the Supreme Court found that ERISA

manifested sufficient congressional intent to recharacterize state-law claims that fall within the

scope of § 502(a) of ERISA as federal claims subject to removal.  See 481 U.S. at 65-66.  The

Supreme Court concluded that an ERISA-preemption defense provides a sufficient basis for removal

of a cause of action to the federal courts notwithstanding the traditional limitation imposed by the

"well-pleaded complaint" rule.  481 U.S. at 63-66.

"[D]efendants seeking removal under the doctrine of complete preemption bear a significant

burden.  They must establish congressional intent to extinguish similar state claims by making the

federal cause of action exclusive.  And as [courts] must construe removal strictly, reasonable doubts

must be resolved against the complete preemption basis for it."  Lontz v. Tharp, 413 F.3d 435, 441

(4th Cir. 2005).  The Supreme Court in Metropolitan Life Insurance Co. v. Taylor held that the

scope of the "complete preemption" exception for removal is narrow, and limited to state

common-law or statutory claims that fall within § 502(a)(1)(B) of ERISA's civil-enforcement

provision, because "the legislative history consistently sets out this clear intention to make

[§ 502(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of

federal court jurisdiction. . . ."  481 U.S. at 66.  The Supreme Court noted, however, that it had

previously had held that "ERISA pre-emption, without more, does not convert a state claim into an

action arising under federal law."  481 U.S. at 64.  To come within the removal exception to the

-14-

well-pleaded complaint rule, a court must, therefore, conclude that the state-law claim "should be characterized as a superseding ERISA action 'to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)." Wright v. Gen'l Motors Corp., 262 F.3d 610, 614 (6th Cir. 2001). In Wright v. General Motors Corp., the United States Court of Appeals for the Sixth Circuit held that ERISA did not preempt a complaint for unlawful termination as a result of race and sex discrimination and retaliation. The state complaint included a request for damages for the proceeds of the plaintiff's late-husband's life-insurance policy under his former employer's Health and Disability Benefit Program. The Sixth Circuit concluded that the complaint was not removable because it "is not a lawsuit claiming wrongful withholding of ERISA covered plan benefits; it is a lawsuit claiming race and sex discrimination and retaliation resulting in damages, one component of which is a sum owed under the provision of the [employee-benefits] plan." 262 F.3d at 614 (internal quotation marks omitted).

In Aetna Health Inc. v. Davila, the Supreme Court set forth the test for finding complete preemption:

> Where the individual is entitled to such [claimed] coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

Aetna Health Inc. v. Davila, 542 U.S. at 210. The Supreme Court held that ERISA completely preempted a claim brought under a separate statute, the Texas Health Care Liability Act, for drug benefits under an ERISA plan, because the claim was not independent of the ERISA plan.

See Aetna Health Inc. v. Davila, 542 U.S. at 210.  The Supreme Court emphasized that complete preemption under § 502(a) of ERISA is not limited to situations in which the state cause of action precisely duplicates a cause of action under §502(a).   See Aetna Health Inc. v. Davila, 542 U.S. at 216 ("Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.").

### 3.    Distinguishing Between Express Preemption and Complete Preemption.

The Supreme Court in Metropolitan Life Insurance Co. v. Taylor treated express preemption under § 514 and complete preemption under § 502(a) as two distinct concepts, with only the latter supporting removal.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. at 64 ("ERISA pre-emption [under § 514], without more, does not convert a state claim into an action arising under federal law."); Felix v. Lucent Techs. Inc., 387 F.3d at 1156.  The Supreme Court in Metropolitan Life Insurance Co. v. Taylor explained that "federal pre-emption is ordinarily a federal defense to the plaintiff's suit," and thus is insufficient grounds for removal.  481 U.S. at 63.  Although the Supreme Court in Metropolitan Life Insurance Co. v. Taylor determined that § 514 of ERISA expressly preempted the plaintiff's state law claims, the "well-pleaded complaint" rule precluded removal on the basis of a federal defense.  See 481 U.S. at 64.

The Tenth Circuit has explained that "ERISA preemption under § 514 is not sufficient for removal jurisdiction and that a state law claim is only 'completely preempted' under [Metropolitan Life Insurance Co. v.] Taylor if it can be recharacterized as a claim under § 502(a)."  Felix v. Lucent Techs., Inc., 387 F.3d at 1156.  In Felix v. Lucent Technologies, Inc., the Tenth Circuit summarized the distinction between express preemption and complete preemption, quoting from the United

States Court of Appeals for the Third Circuit's opinion in <u>Dukes v. U.S. Healthcare, Inc.</u>, 57 F.3d 350 (3d Cir. 1995):

> The difference between preemption and complete preemption is important.  When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

<u>Felix v. Lucent Techs., Inc.</u>, 387 F.3d at 1158 (quoting <u>Dukes v. U.S. Healthcare, Inc.</u>, 57 F.3d at 355). <u>See</u> <u>Giles v. Nylcare Health Plans, Inc.</u>, 172 F.3d at 337 ("When a complaint contains only state causes of action that the defendant argues are merely conflict-preempted [under § 514], the court must remand for want of subject matter jurisdiction.").

The Tenth Circuit elaborated on its view of ERISA complete preemption in <u>Schmeling v. Nordam</u>, 97 F.3d 1336 (10th Cir. 1996), stating:

> We read the term not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal. . . .  This usage reveals that "complete preemption" refers to the replacement of a state cause of action with a federal one.

<u>Schmeling v. Nordam</u>, 97 F.3d at 1342.  In <u>Carland v. Metropolitan Life Insurance Co.</u>, 935 F.2d 1114 (10th Cir. 1991), the Tenth Circuit held that "a state law claim will convert to a federal claim only if the claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions." 935 F.2d at 1118-19. <u>See</u> <u>Felix v. Lucent Techs., Inc.</u>, 387 F.3d at 1157 (quoting <u>Carland v. Metro. Life Ins. Co.</u>).

Other circuits have also stressed that § 502's complete preemption is necessary for removal. <u>See</u> <u>Warner v. Ford Motor Co.</u>, 46 F.3d 531, 536 (6th Cir. 1995)(en banc)(overruling its prior

-17-

precedent for "mistakenly allowing removal in a case not covered by § 1132(a)(1)(B) [§ 502 of ERISA] and only arguably covered by § 1144(a) [§ 514 of ERISA]"); Giles v. Nylcare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999)("The presence of conflict-preemption [§ 514 of ERISA] does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one -- as occurs with complete preemption -- conflict preemption serves as a defense to state action"); King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003) (holding that a state claim must fit within the scope of § 502 and disregarding § 514 express preemption); Toumajian v. Frailey, 135 F.3d 648, 654-55 (9th Cir. 1998)(finding that if both § 514 and § 502 are not met, "the federal court does not have subject matter jurisdiction and the matter should be remanded"); Rice v. Panchal, 65 F.3d 637, 646 (7th Cir. 1995); Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir. 1995)("That the Supreme Court has recognized a limited exception to the well-pleaded complaint rule for state law claims which fit within the scope of § 502 by no means implies that all claims preempted by ERISA are subject to removal." ); Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 272 (2d Cir. 1994).

The Tenth Circuit noted in Felix v. Lucent Technologies, Inc. that a claim that is remanded to state court risks being preempted in state court under § 514 of ERISA, leaving the plaintiff with no remedy. "Although this is a valid concern, we have not found it to be a concern of the federal judiciary." 387 F.3d at 1162.

**4.    Section 510 and Section 502 Complete Preemption.**

If a state-law cause of action conflicts directly with an ERISA cause of action, § 502 of ERISA becomes the exclusive remedy for the rights that ERISA guarantees. In many cases, courts have found that a plaintiff's claim falls within the scope of § 510, which provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or

-18-

discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140 (§ 510 of ERISA).

In <u>Ingersoll-Rand Co. v. McClendon</u>, the Supreme Court held that, "when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected [by § 510 of ERISA,] due regard for the federal enactment requires that state jurisdiction must yield." 498 U.S. at 142, 145. In that case, the plaintiff's employer fired him, citing a companywide reduction in force. The plaintiff sued his employer in Texas state court, alleging that his pension would have vested in another four months and that a principal reason for his termination was the company's desire to avoid making contributions to his pension fund. <u>See</u> 498 U.S. at 135-36. He sought compensatory and punitive damages under various tort and contract theories; he did not assert any cause of action under ERISA. The Texas Supreme Court concluded that ERISA did not preempt the plaintiff's state common-law wrongful discharge claim, because the plaintiff was not seeking lost pension benefits, but instead was seeking lost future wages and punitive damages. <u>See</u> 498 U.S. at 136. The Supreme Court of the United States reversed, finding that the existence of a pension plan was a necessary factor in establishing liability under Texas' common-law wrongful-discharge cause of action. <u>See</u> 498 U.S. at 140. The Supreme Court concluded that the plaintiff's wrongful-termination claim "f[ell] squarely within the ambit of ERISA §510[.]" 498 U.S. at 142. The Supreme Court stated:

> By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits. S. Rep. No. 93-127, pp. 35-36 (1973); H. R. Rep. No. 93-533, p. 17 (1973). We have no doubt that this [wrongful termination] claim is prototypical of the kind Congress intended to cover

-19-

under § 510.

489 U.S. at 143.  The Supreme Court held:

> Unquestionably, the Texas cause of action purports to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a).  Accordingly we hold that when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 510 of ERISA, due regard for the federal enactment requires that state jurisdiction must yield.

489 U.S. at 145 (internal citations and quotations omitted).

### 5.  <u>Defeating § 502 Complete Preemption with an Independent Legal Duty</u>.

The Supreme Court in <u>Aetna Health Inc. v. Davila</u> explained that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and . . . there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."  542 U.S. at 210.  Section 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   28 U.S.C.  § 1132(a)(1)(B)(§ 502(a)(1)(B) of ERISA).  "[A] claim only falls within ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or the plan terms, rather than some other independent source."  <u>David P. Coldesina D.D.S., P.C., Employee Profit Sharing Plan and Trust v. Estate of Simper</u>, 407 F.3d 1126,1137 (10th Cir. 2005)(citing <u>Aetna Health Inc. v. Davila</u>, 542 U.S. at 210); <u>Marin Gen. Hosp. v. Modesto & Empire Traction Co.</u>, 581 F.3d 941, 950 (9th Cir. 2009)("Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on 'other independent legal dut[ies]' within the meaning of <u>[Aetna Health Inc. v. ]Davila</u>.").  In <u>David P. Coldesina D.D.S., P.C., Employee Profit Sharing Plan and Trust v. Estate of Simper</u>, the Tenth Circuit held that the

district court erred in dismissing the plaintiffs' negligent-supervision claim, which § 502 of ERISA did not completely preempt, because the plaintiffs' claim implicated an independent legal duty recognized in agency and tort law that arose out of agency relationships. See 407 F.3d at 1137.

A number of circuits have found a distinction between claims that implicate "rate of payment" and those that implicate "right of payment," and have held that, where claims do not involve ERISA coverage determinations and the claims have already been deemed "payable," the only remaining issue is whether they were paid at the proper contractual rate, and therefore ERISA preemption does not apply.   See, e.g., Lone Star OB/GYN Assocs. v. Aetna Health, Inc., 579 F.3d 525, 532 (5th Cir. 2009); Conn. State Dental Ass'n v. Anthem Health Plans, Inc., No. 08-15268, 2009 U.S. App. LEXIS 28773 (11th Cir. Dec. 30, 2009).  In Radcliff v. El Paso Corp., 377 F. Supp. 2d 558 (S.D.W. Va. 2005), the plaintiff asserted that the defendants' refusal to pay him benefits and/or severance pay was in retaliation for him claiming workman's compensation benefits. See 377 F. Supp. 2d at 564.  The United States District Court for the Western District of Virginia found that the only stated injury was the defendants' refusal to pay benefits to the plaintiff under his ERISA-governed benefits plan, that there was, thus, no independent legal duty outside the scope of the ERISA plan, and there was, therefore, complete preemption.  See 377 F. Supp. 2d at 564.

## LAW REGARDING THE NMHRA

The NMHRA makes it an unlawful discriminatory practice for

an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or

gender identity . . . .

NMSA 1978, § 28-1-7.  The NMHRA also allows individuals to bring a lawsuit in the appropriate

district court after exhausting their administrative remedies.  See Luboyeski v. Hill, 117 N.M. 380,

382, 872 P.2d 353, 355 (1994). The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the
> district court of the county where the discriminatory practice occurred or where the
> respondent does business by filing a notice of appeal within ninety days from the
> date of service of the [New Mexico Human Rights] commission's order.

NMSA 1978, § 28-1-13(A).

The Supreme Court of New Mexico applies the framework that the Supreme Court

established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "[w]hen considering a

violation of the NMHRA." Juneau v. Intel Corp., 139 N.M. 12, 15, 127 P.3d 548, 551 (2005).  The

Supreme Court of New Mexico has stated that, "when considering claims under the NMHRA, we

may look at federal civil rights adjudication for guidance in interpreting the NMHRA.  Our reliance

on the methodology developed in the federal courts, however, should not be interpreted as an

indication that we have adopted federal law as our own." Ocana v. Am. Furniture Co., 135 N.M.

539, 549, 91 P.3d 58, 68 (2004)(citations and internal quotations omitted).  "[C]laims of age, race,

national origin, gender discrimination, and retaliation are all subject to the burden shifting

framework that the Supreme Court established in McDonnell Douglas Corp. v. Green." Gamez v.

Country Cottage Care and Rehab., 377 F. Supp. 2d 1103, 1119 (D.N.M. 2005)(citing McDonnell

Douglas Corp. v. Green, 411 U.S. at 802-804).  Under the McDonnell Douglas framework, a

plaintiff must set forth a prima-facie case of discrimination.  See Kelley v. City of Albuquerque,

375 F. Supp. 2d 1183, 1210 (D.N.M. 2004).  If the plaintiff establishes a prima-facie case for any

of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate

nondiscriminatory reason for its employment related decision." McDonnell Douglas Corp. v. Green, 411 U.S. at 802. "Upon the employer's articulation of a legitimate, nondiscriminatory reason . . . the presumption of discrimination established by the prima facie case simply drops out of the picture." Kelley v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted). The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual. See Kelley v. City of Albuquerque, 375 F. Supp. 2d at 1210 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)). The Supreme Court of New Mexico has stated that the framework it applies to discrimination claims under the NMHRA is as follows: "[A]n employee bears the initial burden of demonstrating a prima facie case of discrimination, which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. The employee then has the opportunity to rebut the employer's proffered reason as pretextual or otherwise inadequate." Juneau v. Intel Corp., 139 N.M. at 15, 127 P.3d at 551 (citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-05. This approach is the same as the McDonnell Douglas framework.

### 1.    Age-Discrimination Claims Under the NMHRA.

The NMHRA prohibits employment discrimination on the basis of age. See NMSA 1978, § 28-1-7(A). In Smith v. FDC Corp., 109 N.M. 514, 787 P.2d 433 (1990), the Supreme Court of New Mexico used the evidentiary methodology developed in McDonnell Douglas Corp. v. Green to provide guidance to interpreting the New Mexico Human Rights Act and analyzing discrimination claims. See 109 N.M. at 517-18, 787 P.2d at 436-37.

Under McDonnell Douglas Corp. v. Green, the plaintiff first bears the burden of establishing a prima-facie case of age discrimination, which is established when the plaintiff proves the following elements: (i) the plaintiff is a member of the protected age class -- persons who are forty

years old or older; (ii) the plaintiff was qualified to continue in his or her position of employment; (iii) the plaintiff's employment was terminated; and (iv) someone not a member of the protected age class filled the plaintiff's position.  See Cates v. Regents of the N.M. Inst. of Mining & Tech., 124 N.M. 633, 638, 954 P.2d 65, 71 (1998).  If the plaintiff carries this burden, the employer must then come forward with some legitimate, non-discriminatory reason for the adverse employment action. If the employer succeeds in this showing, the burden shifts back to the plaintiff to show that the employer's proffered justification is pretextual.  See Hinds v. Sprint/United Management Co., 523 F.3d at 1195.

In Branson v. Price River Coal Co., 853 F.2d 768 (10th Cir. 1988), the Tenth Circuit altered the McDonnell Douglas framework's fourth prima-facie element for reduction-in-force age-discrimination cases.  See Branson v. Price River Coal Co., 853 F.2d at 770.  The Tenth Circuit reasoned that, because it is difficult to prove that a younger employee replaced an older employee in a reduction-in-force situation, as a reduction in force necessitates that positions be eliminated, in such cases, the plaintiff can establish the fourth element of the prima-facie case through direct or circumstantial evidence that the plaintiff was treated less favorably than younger employees.  See id. at 771.  The Supreme Court of New Mexico has stated that it "agree[s] with the Branson court that an age-discrimination plaintiff in a reduction-in-force case may satisfy the fourth factor of the McDonnell-Douglas test by submitting evidence that [the] plaintiff was treated less favorably than younger employees."  Cates v. Regents of the N.M. Inst. of Mining & Tech., 124 N.M. at 639, 954 P.2d at 71.

**2.    Retaliation Claims Under the NMHRA.**

The NMHRA, Section 28-1-7(I)(2), declares it an unlawful discriminatory practice for "any person or employer to . . . engage in any form of threats, reprisal or discrimination against any

person who has opposed any unlawful discriminatory practice or has filed a complaint . . . under the Human Rights Act." Prohibited acts of "threats, reprisal or discrimination" are considered together under the general label of unlawful retaliation. See Juneau v. Intel Corp., 139 N.M. at 16, 127 P.3d at 552 (2005). To establish a prima-facie case of retaliation, the plaintiff must show that: (i) he or she engaged in protected activity; (ii) he or she suffered an adverse employment action; and (iii) there is a causal connection between these two events. See Ulibarri v. State Corr. Acad., 139 N.M. 193, 200, 131 P.3d 43, 50 (N.M. 2006).

## LAW REGARDING NEW MEXICO WRONGFUL-TERMINATION CLAIMS

New Mexico recognizes a cause of action for wrongful termination. In Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 918 P.2d 7 (1996) the Supreme Court of New Mexico stated:

> [I]n New Mexico an employment contract is for an indefinite period and is terminable at the will of either party unless there is a contract stating otherwise. New Mexico recognizes two exceptions to this general rule, however: wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge.

121 N.M. at 731, 918 P.2d at 10 (internal quotations and citations omitted). New Mexico courts created the tort of wrongful discharge "as a means of redress for the very limited situation in which an employee has no other means of protection against an employer's breach of public policy. If the employee already has some protection, either because of an employment contract or through another cause of action, the tort is unnecessary and will not be recognized." Salazar v. Furr's, Inc., 629 F. Supp. 1403, 1409 (D.N.M. 1986).

This tort is limited. In Salazar v. Furr's Inc., the Honorable Santiago E. Campos, United States District Judge, declined to allow the plaintiff to bring her wrongful discharge claim because the claim was identical to her claim under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e-h, based upon sex.  See 629 F. Supp. at 1408.  Judge Campos stated that, because "the public policies that may have been violated . . . can be vindicated under the federal legislation, and perhaps under the New Mexico Human Rights Act as well, the Court finds that the tort of wrongful discharge will not lie."  629 F. Supp. at 1408.  Judge Campos continued by stating that, "[w]here a remedy other than this tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action."  Id.

Moreover, "[t]his Court . . . has repeatedly refused to recognize a claim for [wrongful] discharge where other remedies are available to vindicate the alleged public policy violation.  Specifically, we have refused to recognize an employer's alleged Title VII violation as a basis for this tort."  McDonald v. Corr. Corp. of Am., 181 F. Supp. 2d 1274, 1282-83 (D.N.M. 2002) (Baldock, J., Circuit Judge sitting by designation).   See Mayo v. Fowler Fitness, Inc., No. CIV 02-0222 JB/RLP, Memorandum Opinion and Order at 40-42, filed October 8, 2003 (Doc. 99)(noting that the plaintiff did not dispute that her claim for wrongful termination was identical to and indistinguishable from Title VII claims alleging retaliation and, because the plaintiff had identical remedies available to her under Title VII, the defendant was entitled to judgment as a matter of law on her wrongful-termination claim), aff'd, 110 Fed. Appx. 69 (10th Cir. 2004); Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 131 N.M. 607, 41 P.3d 333, 341 (holding that, "[b]ecause [the plaintiff]'s discharge did not violate the Human Rights Act, his claim of wrongful discharge in violation of public policy must fail.").

## NEW MEXICO LAW REGARDING PRIMA-FACIE TORT

"Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are otherwise lawful, but fall outside of the rigid traditional intentional tort categories." Portales

Nat'l Bank v. Ribble, 134 N.M. 238, 240 75 P.3d 838, 840 (N.M. 2003).  The Supreme Court of

New Mexico has found that prima-facie tort exists only when the defendant's acts meet the

following elements: (i) an intentional unlawful act; (ii) committed with the intent to injure the

plaintiff; (iii) causing injury to the plaintiff; and (iv) the absence of justification for the injurious act.

See Grover v. Stechel, 132 N.M. 140, 145, 45 P.3d 80, 85 (2002)(citing Schmitz v. Smentowski,

109 N.M. 386, 396, 785 P.2d 726, 736 (1990)).  The Supreme Court of New Mexico in Schmitz v.

Smentowski held that the tortious act "must be committed with the intent to injure the plaintiff, or,

in other words, without justification, but it need not be shown that the act was solely intended to

injure plaintiff." 109 N.M. at 395, 785 P.2d at 736.

    "Prima facie tort was not intended to provide a remedy for every intentionally caused harm."

Lexington Ins. Co. v. Rummel, 123 N.M. 774, 777, 945 P.2d 992, 995 (1997).  "Although prima

facie tort is not to become a catch-all alternative for every action that cannot stand on its own legs,

[the New Mexico Court of Appeals] has, under certain circumstances, been willing to recognize a

prima facie tort claim, even though the conduct in question bore a resemblance to another cause of

action."  Hagebak v. Stone, 133 N.M. 75, 84, 61 P.3d 201, 209 (Ct. App. 2002)(internal quotations

omitted).  "[T]here is simply no need to resort to prima facie tort" when a plaintiff has "existing

causes of action provid[ing] reasonable avenues to a remedy for the asserted wrongful conduct."

Bogle v. Summit Inv. Co., L.L.C., 137 N.M. 80, 89, 107 P.3d 520, 529 (Ct. App. 2005).

    A plaintiff may not advance a claim for wrongful termination of an at-will employment

"under the guise of prima facie tort," because that "would emasculate the doctrine of employment

terminable at will." E.E.O.C. v. MTS Corp., 937 F. Supp. 1503, 1516 (D.N.M. 1996). See Yeitrakis

v. Schering-Plough Corp., 804 F. Supp. 238, 249 (D.N.M. 1992)(holding that "prima facie tort is

unavailable to remedy the termination of an at-will employee, even where he is terminated for bad

cause.").

A plaintiff also has no claim in prima-facie tort for intentional discrimination. See Silverman v. Progressive Broadcasting, Inc., 125 N.M. 500, 510, 964 P.2d 61, 71 (Ct. App. 1998). "Intentional acts by reason of sexual harassment and sexual discrimination are unlawful acts and thus not actionable, as a matter of law, under the prima facie tort theory." Id. (internal quotations omitted). In Silverman v. Progressive Broadcasting, Inc., the New Mexico Court of Appeals held that the trial court properly dismissed the plaintiff's prima-facie-tort claim against the defendants because she contended that the defendants had committed a prima-facie tort by intentionally discriminating against her on the basis of sex. See 125 N.M. at 510, 964 P.2d at 71.

## ANALYSIS

Sandia Labs moves the Court to dismiss Ruby's four state-law claims because ERISA completely preempts them. Ruby moves the Court to remand his case to state court because, he argues, ERISA does not completely preempt his claims. Complete preemption is an exception to the well-pleaded complaint rule that permits removal of a complaint alleging state-law claims if "federal preemption makes the state law claim necessarily federal in character . . . ." Turgeau v. Admin. Review Bd., 446 F.3d 1052, 1061 (10th Cir. 2006). Thus, even if a complaint alleges state-law claims, a state-law claim may be converted into an ERISA claim for purposes of removal and the well-pleaded complaint rule if ERISA completely preempts the claim. See Felix v. Lucent Techs., Inc., 387 F.3d at 1156. Because the Court finds that Ruby's NMHRA claims for age discrimination and retaliation arise from independent legal duties separate from those ERISA creates, the Court finds that ERISA does not completely preempt those claims. Because the Court finds that ERISA completely preempts Ruby's claims for wrongful termination and prima-facie tort, the Court will convert those claims into a federal claim under ERISA's civil-enforcement provisions.

-28-

Because complete preemption by ERISA converts the state-law claims into a federal claim upon which relief can be granted, the Court denies Sandia Labs' motion to dismiss and will grant Ruby leave to amend his Complaint to properly plead his preempted state claims under ERISA and to add additional state and/or federal claims. Further, because both parties have requested the Court to maintain supplemental jurisdiction if the Court finds complete preemption for some of the claims, the Court will deny the Plaintiff's motion to remand and will maintain jurisdiction over all Ruby's claims.

## I.   THE COURT CONSTRUES RUBY'S COMPLAINT IN THE LIGHT MOST FAVORABLE TO HIM AND FINDS THE COMPLAINT ASSERTS MIXED MOTIVES FOR HIS AGE-DISCRIMINATION AND RETALIATION CLAIMS.

Sandia Labs has brought the issue of ERISA complete preemption before the Court on a motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court, therefore, accepts all of Ruby's allegations as true and views Ruby's Complaint in the light most favorable to him. See Maez v. Mountain States Tel. & Tel., 54 F.3d 1488, 1496 (10th Cir. 1995) (citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).

In his motion to remand, Ruby argues that his Complaint states causes of action:

> predicated on the averments that Sandia treated him differently than younger employees in order to save money, that but for his age he would not have been treated unfairly (Complaint ¶ 20) and that he "was treated less favorably by Sandia management than other younger employees with respect to employment decisions because of his age." [Complaint], ¶ 59.

Motion to Remand at 2. At the hearing, Mr. Garcia argued that "at the heart of Dr. Ruby's ten page Complaint are allegations that Sandia discriminated against him because of -- on the basis of age." Tr. at 3:10-12 (Garcia). He pointed to Paragraph 20 of the Complaint, which states that "Were Dr. Ruby not an older long-term employee he would have not have been the subject of such wrongful termination." Complaint ¶ 20, at 5. While Garcia conceded that Ruby has alleged that part of the

-29-

reason Sandia Labs terminated Ruby was in an effort to save money, "including denying Dr. Ruby retirement benefits,"  Transcript of Hearing at 4:5-7(Garcia), he also argued that "[the Complaint] tells a story about age discrimination, it tells a story about retaliation, and it tells a story about termination of an employee in order to save money." Tr. at 30:12-14 (Garcia).

Sandia Labs repeatedly emphasized Paragraphs 18 through 20 of Ruby's Complaint, which state:

> 18.   At the time of Dr. Nelson's hiring, Dr. Ruby, as an older long-term employee, was close to vesting and thus obtaining his retirement benefits from Sandia.
>
> 19.   Dr. Nelson, with the blessing of Sandia senior management and human resources, began to engage in a series of actions in order to create a pretext for firing Dr. Ruby.
>
> 20.   Nelson did so at Sandia's direction and/or with Sandia's acquiescence in order to prevent Dr. Ruby from obtaining his retirement benefits which would in turn save Sandia a significant amount of money.  Were Dr. Ruby not an older long-term employee he would have not have been the subject of such wrongful actions.

Complaint ¶¶ 18-20, at 5.  Sandia Labs argues that all four of Ruby's claims state: "The Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein." Complaint ¶¶ 52, 61, 69, and 75, at 9-11.  Sandia Labs argues that deprivation of retirement benefits is the sole motive in the Complaint.  See Tr. at 20:10-14 (Stelzner).  The Court disagrees.

The Court finds, taking all the facts in the Complaint as true and construing them in the light most favorable to Ruby, the Complaint alleges mixed motives for Ruby's state-law claims under the NMHRA.  The Court agrees, and Ruby does not contest, that one of the motives asserted is cost-saving measures by depriving Ruby of benefits.  The Complaint, however, also asserts an independent discriminatory motive, that "Dr. Ruby was treated less favorably by Sandia management than other younger employees with respect to employment decisions because of his

age," Complaint ¶ 59, at 9 and a retaliatory motive, that Ruby's termination was in retaliation for "Dr. Ruby's discussion with Sandia's upper management regarding the unfair treatment of older Sandia employees including himself," Complaint ¶ 67, at 10. Although Sandia Labs contends that Ruby has asserted only a benefits motive, Mr. Stelzner at the hearing conceded that: "There certainly is an argument that can be made that under, let's say, the age discrimination, state age discrimination cause of action, the first two counts, there are other motives which could lead to violations of those statutes, of those causes of action." Tr. at 23:23-24:3 (Stelzner).

Moreover, Ruby has filed a motion for remand, challenging this Court's jurisdiction to consider his claims. Sandia Labs, as the party invoking the Court's jurisdiction, bears the burden of establishing that removal is proper under ERISA. See Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001). The Court must assess whether removal was proper, based upon Sandia Labs' assertion of complete preemption. Removal is construed narrowly, and "where the plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Martin v. Franklin Capital Corp., 251 F.3d at 1290 (quoting Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). See Lontz v. Tharp, 413 F.3d at 441 ("[D]efendants seeking removal under the doctrine of complete preemption bear a significant burden . . . And as [courts] must construe removal strictly, reasonable doubts must be resolved against the complete preemption basis for it."). Because Ruby and Sandia Labs cannot agree on the motives that are asserted in the Complaint, and this uncertainty is the linchpin upon which finding complete preemption over the NMHRA claims depends, the Court must resolve the dispute about what the Complaint alleges in Ruby's favor.

In Trotter v. Perdue Farms, 168 F. Supp. 2d 277 (D. Del. 2001), the defendants argued that because the plaintiffs could seek relief pursuant to § 510 and § 502 of ERISA, ERISA must preempt

all claims alleging a mixed motive in taking an adverse employment action because any other relief would conflict with ERISA.  See 168 F. Supp. 2d at 283.  The United States District Court for the District of Delaware found that the defendants' argument extended the protections afforded by § 510 of ERISA too far, stating: "Simply because § 510 of ERISA may be implicated by an adverse employment action because the plaintiff has alleged the defendant acted with a benefits-defeating intent does not foreclose other state law vehicles of relief that may result from the employer's actions." 168 F. Supp. 2d at 283.

Because Ruby argues that he has asserted mixed motives for his claims of age discrimination and retaliation, and because the Court finds support for that interpretation in the Complaint, the Court will construe Ruby's claims under the NMHRA for age-discrimination and retaliation as asserting more than the sole benefits-defeating motive that Sandia Labs' contends is asserted for those claims.  The Court, however, after careful review of Ruby's Complaint, does not find that his common-law claims for wrongful termination and prima-facie tort can fairly be interpreted as asserting mixed motives.  Taking each of those claims in isolation, the Complaint states that Sandia is liable for wrongful termination and the prima-facie tort because Sandia Labs prevented Ruby from obtaining his retirement benefits.  See Complaint ¶¶ 70, at 11 ("Sandia terminated Dr. Ruby's employment to prevent him from receiving a full retirement services pension."); id. ¶ 76, at 11 ("In firing Dr. Ruby, Defendant Sandia acted to intentionally prevent Dr. Ruby from obtaining the full measure of retirement benefits.").  Neither claim mentions his age or the discussion he had with Sandia Labs' management about unfair treatment.  Taking the claims, as pled, in the light most favorable to Ruby, the Court cannot fairly deduce that the claims assert any other motive besides a benefits-defeating motive.

The Court is concerned, however, about the incorporation paragraphs included in both the

wrongful-termination and the prima-facie tort-claims.  Ruby included an incorporation clause at the start of each of his four claims, which "incorporates by reference the preceding paragraphs as though they were stated fully herein."   Complaint ¶¶ 52, 61, 69, and 75, at 9-11.  If the Complaint previously asserted mixed motives, it seems reasonable that those motives would carry through to the other claims.  The Court acknowledges, and is concerned, that there is a tension between it finding mixed motives for the first and second claims and then not giving the incorporation paragraphs their full meaning by reading mixed motives into the third and fourth claims.  The Court concludes, however, that, reading Ruby's Complaint in the light most favorable to him, the Court can find no fair or logical interpretation of the language of Ruby's wrongful-termination and prima-facie-tort claims, as pled, which implicates age or retaliation as independent motives giving rise to those causes of action independent from his allegation that Sandia Labs acted to deprive him of his retirement benefits.  The Court has also taken into consideration that Ruby put forth no argument, in either the briefing or at the hearing,  urging the Court to interpret Ruby's third and fourth claims as asserting a mixed motive, or even urging the Court to find such an interpretation based upon the incorporation clause.  Instead, Ruby's arguments focused on the NMHRA claims as mixed-motive claims.  At the hearing, Mr. Garcia all but conceded that the wrongful-termination claim and prima-facie-tort claim are dependent on the benefits-defeating motive.  See Tr. at 8:23-9:1 (Garcia)(stating that Ruby's third and fourth claims "are the only claims that have some or built some way on the benefits-defeating motive allegations in the Complaint.").  Because Ruby has not argued that the mixed motives gave rise to his claims of wrongful termination and prima-facie tort, and because the Court finds insufficient support for this interpretation in the Complaint, the Court

will not construe the Complaint to assert the mixed motives for Ruby's third and fourth claims.[7]

## II. ERISA DOES NOT COMPLETELY PREEMPT RUBY'S NMHRA AGE-DISCRIMINATION CLAIM.

Sandia Labs argues that ERISA completely preempts Ruby's age-discrimination claim, under the Supreme Court's holding in Ingersoll-Rand v. McClendon, because the only motive that Ruby pleads in his Complaint which Sandia Labs had for discriminating against him by terminating him is that "Nelson did so at Sandia's direction and/or with Sandia's acquiescence in order to prevent Dr. Ruby from obtaining his retirement benefits which would in turn save Sandia a significant amount of money." Complaint ¶ 20, at 3. Sandia Labs argues that Ruby's age-discrimination claim, which incorporated paragraph 20 by reference in paragraph 52, thus falls within § 510 of ERISA, which provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U. S. C. § 1140 (§ 510 of ERISA). The exclusive remedy for rights provided by § 510 is the civil-enforcement mechanism in § 502 of ERISA, see Ingersoll-Rand v. McClendon, 498 U.S. at 144, and therefore Sandia Labs argues that ERISA completely preempts Ruby's claim.

Ruby argues that Sandia Labs has failed to satisfy both prongs of the test that the Supreme Court set forth in Aetna Health Inc. v. Davila for finding ERISA complete preemption, because Sandia Labs has not shown that Ruby's NMHRA age-discrimination claim is based solely upon

---

[7] If the Court has misread Ruby's intent on the third and fourth claims, and he wants them to be mixed-motive claims, on amendment, he can make that fact clear, and the Court can then determine what the effect of a mixed-motive for these two claims is and, if appropriate, the case may be remanded for lack of jurisdiction.

legal duties that ERISA creates, rather than on legal duties that some independent source creates. See David P. Coldesina D.D.S., P.C., Employee Profit Sharing Plan and Trust v. Estate of Simper, 407 F.3d at 1137.  Because the Court finds that Ruby's age-discrimination claim is based on an independent legal duty, separate from ERISA, the Court finds that § 502 of ERISA does not completely preempt Ruby's NMHRA claim for age discrimination.

A.   **RUBY'S RELIANCE ON SHAW v. DELTA AIR LINES, INC. DOES NOT DEFEAT COMPLETE PREEMPTION.**

In his response brief, Ruby argued that Sandia Labs' complete preemption argument is contrary to the Supreme Court's holding in Shaw v. Delta Air Lines, Inc., which found partial preemption appropriate, but observed that total ERISA preemption might interfere with the cooperative federal-state civil-rights system.  See 463 U.S. at 102.  In denying complete preemption, then, the Supreme Court found applicable the exception to preemption found in § 514 of ERISA, because preemption would "alter, amend, modify, invalidate, impair, or supersede . . . [a] law of the United States." 29 U.S.C. § 1144(d)(§ 514 of ERISA).  Ruby cited to cases which he argued support the proposition that ERISA does not preempt Ruby's age-discrimination claim.  See Devlin v. Transp. Comms. Intern. Union, 173 F.3d 94, 100 (2d Cir. 1999)(holding that § 514 of ERISA does not preempt state-law age-discrimination claims); Barber-Colman Co. v. Barbosa, 940 F. Supp. 1269, 1273 (N.D. Ill. 1996)(applying Shaw v. Delta Air Lines, Inc. and holding that § 514(d) of ERISA excepted the plaintiff's age-discrimination claim from preemption).

Ruby's reliance on Shaw v. Delta Air Lines, Inc. to defeat preemption answers only the question whether ERISA expressly preempts Ruby's claims, under § 514 of ERISA.  Sandia Labs, however, is not asserting federal jurisdiction because of express preemption, but rather Sandia Labs is arguing that complete preemption creates federal subject-matter jurisdiction.  This limited

-35-

argument makes sense, as Sandia Labs cannot base its removal of Ruby's claims to federal court on § 514 express preemption.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. at 64 ("ERISA pre-emption [under § 514], without more, does not convert a state claim into an action arising under federal law.").  As the Tenth Circuit stated in Felix v. Lucent Technologies, Inc.:

> When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

387 F.3d at 1158.

Because Sandia Labs is asserting complete preemption, and not express preemption, the issue that faces the Court is whether Ruby's NMHRA age-discrimination claim fits within the scope of § 510 and § 502's civil-enforcement scheme.  See Hoops v. Elk Run Coal Co., Inc., 57 F. Supp. 2d at 360 n.7 (finding that Shaw v. Delta Air Lines, Inc. is not an obstacle to ERISA complete preemption of the plaintiff's state-law age-discrimination claim).  Similarly, the cases that Ruby cited in his response to the motion to dismiss supporting his argument that ERISA does not preempt state-law age-discrimination claims address only express preemption under § 514.  None of the cases consider whether the claims in question fall within the civil enforcement mechanism of § 502.

**B.    RUBY'S AGE-DISCRIMINATION CLAIM HAS AN INDEPENDENT LEGAL DUTY SEPARATE FROM ERISA, AND THUS ERISA DOES NOT COMPLETELY PREEMPT THIS CLAIM.**

In the reply to the motion to remand, Ruby argued that his NMHRA claims do not fall within the ambit of ERISA's civil-enforcement provision and that his claims arise from a legal duty independent of ERISA.  See Reply to Motion to Remand, at 5, 7.  At the hearing, Ruby's counsel, Mr. Garcia, argued that Ruby's NMHRA age-discrimination claim does not fall within § 502 of ERISA under the test for complete preemption that the Supreme Court set forth in Aetna Health Inc.

v. Davila.  Mr. Garcia characterized the test as two-pronged: (i) the plaintiff could bring his or her

claim within the scope of § 502(a)(1)(B) of ERISA; and (ii) there is no other independent legal duty

that is implicated by the defendant's actions.  See Aetna Health Inc. v. Davila, 542 U.S. at 210;

David P. Coldesina D.D.S., P.C., Employee Profit Sharing Plan and Trust v. Estate of Simper,

407 F.3d at 1137 (stating that "a claim only falls within ERISA's civil enforcement scheme when

it is based solely on legal duties created by ERISA or the plan terms, rather than some other

independent source.").  Mr. Garcia contended that Sandia Labs' termination implicated an

independent legal duty other than one under ERISA.  Specifically, Mr. Garcia argued that Ruby "has

set forth a prima facie case for age discrimination that stands separate and apart from the

benefits-defeating motive counts."  Tr. at 9:4-7 (Garcia); Response at 14.  Ruby directs the Court

to paragraph 20 of his Complaint, which states: "Were Dr. Ruby not an older long-term employee

he would have [sic] not have been the subject of such wrongful tactics."  Complaint ¶ 20, at 5.  He

also cites to paragraph 59, which states: "Dr. Ruby was treated less favorably by Sandia

management than other younger employees with respect to employment decisions because of his

age."  Complaint ¶ 59, at 9.  Ruby argues that his age-discrimination claim is based on a statute of

general applicability, NMSA 1978, § 28-1-7, which does not depend on the existence of an ERISA

plan.

Sandia Labs contends that, looking to Ruby's prayer for damages, which seeks, in relevant

part: "1. Compensatory damages under the New Mexico Human Rights Act and at common law

based on Defendant's tortious conduct, for lost wages and benefits, including but not limited to

retirement benefits, and emotional pain and suffering,"  Complaint at 12, it is clear that Ruby cannot

bring his age-discrimination claim without implicating the ERISA retirement plan.  See Tr. at

27:19-25 (Stelzner).  Sandia Labs cited a number of cases which found that ERISA completely

-37-

preempted age-discrimination claims.  See, e.g., McLain v. Anderson Corp., 567 F.3d 956, 966-67 (8th Cir. 2009); Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 677 (3d Cir. 2000); Harris v. Michigan Consol. Gas Co., 117 F. Supp. 2d 642, 645 (E.D. Mich. 2000)(holding that, because the plaintiff's complaint stated that the only reason for her discharge was "solely for the purpose of decreasing costs and expenses normally associated with older long-term employees," her claims for age discrimination and wrongful discharge were "straightforward claim under § 510 of ERISA" and fell "within the enforcement provisions of § 502, which requires complete preemption."); Hoops v. Elk Run Coal Co., Inc., 57 F. Supp. 2d 357, 360 (S.D.W. Va. 1999)(holding that plaintiffs' claims for age discrimination under West Virginia Human Rights Act, allegedly motivated in part by employer's desire to avoid paying pension benefits, "clearly violates section 510 of ERISA . . . and it falls squarely within the federal statute's civil enforcement scheme").[8]

In Wood v. Prudential Insurance Company of America, the plaintiff argued that his complaint contained claims of age and disability discrimination entirely separate from his benefits-defeating allegation.  See 207 F.3d at 677.  The Third Circuit, however, found "nothing in his complaint other than an allegation that [the defendant] terminated the [plaintiff's] employment to avoid paying health and retirement benefits."  207 F.3d at 677.  The Third Circuit agreed with the district court, which found that, "[a]side from nearing early retirement age, there are no facts alleged in the Complaint to support a claim that [the plaintiff's] age had any bearing on [the defendant's] decision to terminate him."  207 F.3d at 677.  Because the complaint provided no other rationale for

_____

[8] The Southern District of West Virginia noted that, although the plaintiffs, in an attempt to avoid preemption, pointed to other non-benefit-cost-avoidance allegations of their complaint, such as physical handicaps and higher wage rates of older employees, workers' compensation cost factors, and other non-benefit-related bases for termination, five of the six substantive allegations mentioned benefits as a motivating factor for termination, and this dominance illustrated the primacy of the benefit-related allegations.  See  57 F. Supp. 2d at 360 n.6.

the defendant's alleged age discrimination other than to avoid paying benefits, the Third Circuit read the complaint as alleging a benefits-defeating motive within the scope of § 510 of ERISA. See 207 F.3d at 677.

In McLain v. Anderson Corp., the plaintiff appealed the district court's finding of ERISA complete preemption of his state-law age-discrimination claim against his employer. See 567 F.3d at 966-67.  The plaintiff argued that complete preemption was not present because his pension losses were only a "consequence of the alleged discriminatory conduct," that "ERISA is not intended to preempt state law where there is an incidental loss of benefits as a result of discrimination," and "that ERISA does not preempt state law claims . . . where the benefits claimed are merely one part of the remedy."   567 F.3d at 965.  The Eighth Circuit noted, however, that the plaintiff's original complaint expressly asserted that the defendant, because of the plaintiff's age, interfered with the plaintiff's opportunity to acquire pension benefits in violation of state age-discrimination laws. See 567 F.3d at 965-66.  The Eighth Circuit, therefore, rejected as contrary to the record the plaintiff's argument that he merely sought to recover lost benefits as incidental damages to other alleged unlawful conduct.  See 567 F.3d at 966.  The plaintiff also argued that complete preemption was not present because he did not specifically allege that the motivating factor behind his termination was the defendant's attempt to avoid benefit payments.  See id.  The Eighth Circuit rejected the plaintiff's argument, finding that § 510 of ERISA explicitly regulates a broader swath of employer activity, which included the assertion made in the plaintiff's original complaint that his employer discriminated against him based on his age to interfere with his pension benefits.  See id.

Neither the Tenth Circuit, nor this Court have addressed whether ERISA completely preempts a NMHRA age-discrimination claim under NMSA 1978, § 28-1-7.  In his reply on the

motion for remand, Ruby argued that his age-discrimination claim has no counterpart in ERISA.
See Reply to Motion to Remand at 5.  Ruby cited a number of cases in which courts have found that
an age-discrimination claim does not fall within § 502's civil enforcement provision.  See Donald
v. Virginia Elec. and Power Co., 7 F. Supp. 2d 694 (E.D.N.C. 1998); Warner v. Ford Motor Co.,
46 F.3d 531 (6th Cir. 1995)(en banc).  In Warner v. Ford Motor Co., the plaintiff alleged that the
defendant-employer threatened to discharge the plaintiff because of his age unless he took early
retirement.  The United States Court of Appeals for the Sixth Circuit found that it was a

> straight state age discrimination case which has no counterpart or superseding cause
> of action in ERISA.  It is an action to set aside and escape from the early retirement
> agreement, not to recover under it or to "enforce" it or to assert "rights to future
> benefits under the terms of the plan."

46 F.3d at 534 (quoting § 502(a)(1)(B) of ERISA).  The Sixth Circuit held that "[n]o cause of action
created by ERISA may fairly be read to supersede this age-discrimination claim, and there is no
claim that hostile state courts will somehow subvert enforcement of ERISA in such cases."
46 F.3d at 534-35.  The Sixth Circuit rejected complete preemption, and remanded the case to state
court.  See id.  In Donald v. Virginia Elec. and Power Co., the United States District Court for the
Eastern District of North Carolina, in analyzing whether ERISA completely preempted the
plaintiff's age-discrimination claims, stated: "Clearly, an employer with no ERISA benefits plan in
place could unlawfully discriminate against one of its employees based on age.  Therefore, the North
Carolina wrongful discharge cause of action raised in this case does not conflict with a cause of
action brought to enforce § 510 of ERISA." 7 F. Supp. at 698.  In that case, the plaintiff, in response
to one of the defendant's interrogatories, admitted that one of his claims was that he was terminated
for the purpose of denying him retirement benefits, and based on that, the defendants removed,
asserting ERISA complete preemption.  The Eastern District of North Carolina concluded "that

-40-

plaintiff's admissions, which fell outside the scope of the age discrimination claim he asserted in his complaint, are insufficient to trigger ERISA preemption and federal jurisdiction over this matter."  7 F. Supp. 2d at 698.

The Court has also found cases in which district courts have held that ERISA did not completely preempt a plaintiff's age-discrimination claim because the plaintiff had asserted an independent legal duty, or a mixed motive of both age-discrimination and deprivation of benefits. See Borgese v. Am. Lung Assoc. of Maine, 05-CV-88-P-S, 2005 U.S. Dist. LEXIS 24169, at **14-15 (D. Me. Oct. 17, 2005)(stating that "[a]t most, the case at hand involves the possibility of mixed motives, in which an employer both engaged in age discrimination and desired to avoid paying plan benefits," and holding that the plaintiff's age-discrimination claims were not subject to complete ERISA preemption); Nuzzo v. Verizon N.Y., Inc., 04 Civ. 3614 (DLC), 2004 U.S. Dist. LEXIS 16585, *13 (S.D.N.Y. Aug. 19, 2004)("Unlike the plaintiff in Ingersoll-Rand [Co. v. McClendon], Nuzzo's age discrimination claim is made pursuant to a generally applicable state anti-discrimination law that is not premised on the existence of an ERISA plan . . . Nuzzo's action would exist even if Verizon did not maintain an ERISA plan."); Drescher v. Union Underwear Co., 858 F. Supp. 653, 657 (W.D. Ky. 1994)(holding that ERISA did not completely preempt the plaintiff's age-discrimination claim under the Kentucky Civil Rights Act, in which he alleged that he suffered damages "including, but not limited to, being deprived of continued earnings and lost benefits.").

The Court also notes that, although Sandia Labs has provided a number of cases in which courts have found age-discrimination claims fell within the scope of § 510 of ERISA, and were thus under the exclusive enforcement of § 502, none of the cases discuss the second-prong of the complete-preemption test under Aetna Health Inc. v. Davila, addressing whether age discrimination creates an independent source of legal duties.  See 542 U.S. at 210.  "A claim only falls within

-41-

ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or the plan terms, rather than some other independent source." David P. Coldesina D.D.S., P.C. Employee Profit Sharing Plan and Trust v. Estate of Simper, 407 F.3d at 1137.

In Aetna Health Inc. v. Davila, the Supreme Court did not find that the plaintiffs' claims under the Texas Health Care Liability Act ("THCLA") implicated a legal duty that arose independent of any duty imposed by ERISA, explaining:

> The duties imposed by the THCLA in the context of these cases, however, do not arise independently of ERISA or the plan terms. The THCLA does impose a duty on managed care entities to "exercise ordinary care when making health care treatment decisions," and makes them liable for damages proximately caused by failures to abide by that duty. [Tex. Civ. Prac. & Rem. Code] § 88.002(a). However, if a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity's denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause. More significantly, the THCLA clearly states that "[t]he standards in Subsections (a) and (b) create no obligation on the part of the health insurance carrier, health maintenance organization, or other managed care entity to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity." [Tex. Civ. Prac. & Rem. Code] § 88.002(d). Hence, a managed care entity could not be subject to liability under the THCLA if it denied coverage for any treatment not covered by the health care plan that it was administering.

542 U.S. at 212-13.

Ruby argues that Sandia Labs "fails to present any comparison of the legal duties imposed by the NMHRA and those set forth in § 510 of ERISA." Reply to Motion to Remand at 8. Ruby asserts that the legal duty that the NMHRA imposes on Sandia Labs to not discriminate against Ruby is independent from the legal duties ERISA imposes. The Court agrees that the NMHRA age-discrimination claim that Ruby has asserted presents a situation in which a legal duty independent from ERISA exists. The Court, therefore, finds that the second-prong of the complete preemption test is not met, and ERISA does not completely preempt Ruby's age-discrimination claim.

The Court notes that Sandia Labs' counsel, Mr. Stelzner, conceded at the hearing that, if Ruby's Complaint had not mentioned his retirement benefits, his state-law claims would not have triggered ERISA preemption.  See Tr. at 19:2-13 (Court, Stelzner).  To maintain a cause of action for age discrimination under the NMHRA, Ruby must establish that (i) he is a member of the protected age class -- persons who are forty years old or older; (ii) he was qualified to continue in his position at Sandia Labs; (iii) Sandia Labs terminated his employment; and (iv) someone younger than forty years of age filled his position.  See Cates v. Regents of the N.M. Inst. of Mining & Tech., 124 N.M. at 638, 954 P.2d at 71.  Ruby has pled all of these elements in his Complaint.  At fifty-one years of age, Ruby is a member of the protected class.  According to the Complaint, Ruby was qualified to maintain his position as PMTS and SMTS.  Two workers who were "substantially younger" than Ruby filled his position.  Complaint ¶ 43, at 8.  Moreover, the NMHRC found that there is sufficient evidence to believe that age discrimination occurred.  See Complaint ¶ 47, at 8.

The Court recognizes that Ruby's Complaint is inartfully drafted and discusses the loss of his retirement benefits in such a way that it tends to obfuscate the other legal duty that Sandia Labs breached -- to not discriminate against a member of a protected class under the NMHRA -- as well as the other discriminatory motive Sandia Labs allegedly had -- that Sandia Labs terminated Ruby because he was an older employee.  In Paragraphs 19 and 20 of his Complaint, Ruby pleads:

19.    Dr. Nelson, with the blessing of Sandia senior management and human resources, began to engage in a series of actions in order to create a pretext for firing Dr. Ruby.

20.    Nelson did do at Sandia's direction and/or with Sandia's acquiescence in order to prevent Dr. Ruby from obtaining his retirement benefits which would in turn save Sandia a significant amount of money.  Were Dr. Ruby not an older long-term employee he would have not have been the subject of such wrongful actions.

Complaint ¶¶ 19-20, at 5.  The Court agrees with Sandia Labs that these statements fall within the

ambit of § 510 of ERISA, which states that "It shall be unlawful for any person to . . . discriminate against a participant or beneficiary for exercising any right to which he is entitled . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under to plan," and within the civil-enforcement provision of § 502(a)(1)(B), because Ruby seeks to enforce his right to recover his retirement benefits.  This only gets Sandia Labs halfway, however, in showing that ERISA completely preempts Ruby's NMHRA age-discrimination claim.  Sandia Labs must also show that Ruby's age-discrimination claim is based solely on legal duties that ERISA creates.  Sandia Labs has not done so.

 Ruby's Complaint, taken in the light most favorable to Ruby, asserts a mixed motive of both discrimination of Ruby because of his age and a because of a benefits-defeating motive.  Ruby's age-discrimination claim, therefore, exists regardless whether an ERISA plan existed, because the benefit-defeating motive is one of multiple motives that Ruby asserts, not the sole motive.  See Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d at 950 (stating that, "since [the plaintiff's state-law claims] would exist whether or not an ERISA plan existed, they are based on 'other independent legal dut[ies]' within the meaning of [Aetna Health Inc. v.] Davila.").  The United States District Court for the Western District of Kentucky noted in Drescher v. Union Underwear Co., that: "It can be argued that in any circumstance where age discrimination is proven, one motivation for the action would be to cut future pension benefit costs."  858 F. Supp. at 657. Because the NMHRA age-discrimination claim is a legally independent claim from ERISA, providing Ruby an independent protection that does not overlap or conflict with § 502, and because the Court finds that the Complaint articulates the motive that but for his age, Ruby would not have been terminated, the Court finds that ERISA does not completely preempt Ruby's NMHRA age-discrimination claim.

III.   **RUBY'S NMHRA RETALIATION CLAIM IS THE PRODUCT OF AN INDEPENDENT LEGAL DUTY, AND ERISA DOES NOT COMPLETELY PREEMPT THE CLAIM.**

Sandia Labs argues that ERISA completely preempts Ruby's second claim for retaliation for the same reason that ERISA completely preempts his age-discrimination claim: because Ruby incorporated the allegation that Sandia Labs was motivated by denying Ruby his retirement benefits, the claim falls within § 510 and § 502's civil-enforcement provision.  Ruby contends that his NMHRA claim for retaliation is just like his NMHRA claim for age-discrimination and is the product of an independent legal duty separate from ERISA's requirements.  The Court agrees with Ruby, and finds that his NMHRA retaliation claim is based upon a legal duty independent from ERISA and the existence of an ERISA plan.

NMSA 1978, § 28-1-7(I)(2) declares it an unlawful discriminatory practice for "any person or employer to . . . engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint . . . under the Human Rights Act."  Juneau v. Intel Corp., 139 N.M. at 16, 127 P.3d at 552.  To establish a prima facie case of retaliation, Ruby must show that: (i) he engaged in protected activity; (ii) he suffered adverse employment action; and (iii) there was a causal connection between the two.  See Ulibarri v. State Corr. Acad., 139 N.M. at 200, 131 P.3d at 50.  In his Complaint, Ruby contends that he approached Sandia Labs' senior management with his concerns as to disparate treatment that both he and other older employees at Sandia Labs were receiving.  See Complaint ¶ 64, at 10.  He states that the two PIPs he was placed on, his demotion, and his eventual termination bear a causal relationship to his discussions with Sandia Labs' senior management regarding the unfair treatment of older employees.  See Complaint ¶ 67, at 10.

Ruby's Complaint, taken in the light most favorable to Ruby, asserts mixed motives for

Sandia Labs' termination of his employment, including that Sandia Labs retaliated against Ruby because he approached senior management about his concerns of age discrimination.  Ruby's NMHRA retaliation claim, like his NMHRA age-discrimination claim, therefore exists regardless whether an ERISA plan existed, because although he asserts a benefit-defeating motive, it is not the sole motive pled in the Complaint.  Ruby's NMHRA retaliation claim offers Ruby protection that is independent from, and does not overlap with, the protections under § 502's civil enforcement provisions.  The Court believes that, because the NMHRA retaliation claim is the product of a legal duty independent from ERISA, the second-prong of the complete preemption test is not met and that ERISA does not completely preempt Ruby's retaliation claim.

## IV.   ERISA COMPLETELY PREEMPTS RUBY'S WRONGFUL-TERMINATION AND PRIMA-FACIE-TORT CLAIMS.

Although Ruby strenuously argued in his reply to the motion to remand that the NMHRA creates an independent legal duty and thus his claims for age discrimination and retaliation are not preempted, he did not address his common law claims.  See Reply to Motion to Dismiss.  At the hearing, Ruby's counsel Mr. Garcia all but conceded that ERISA preempts Count III and Count IV of Ruby's Complaint -- the wrongful-termination claim and the prima-facie-tort claim.  Mr. Garcia stated:

> If ultimately you decide that some of Dr. Ruby's claims are preempted, we believe it would only be Claims 3 and 4, that is the wrongful termination and prima-facie-tort claims.  Those are the only claims that have some or built some way on the benefits-defeating motive allegations in the Complaint.  And the reason we get to keep the state Human Rights Act claims are because those claims are not dependent in any way on a benefits-defeating motive.

Tr. at 8:23-9:1 (Garcia).  He argued that the two NMHRA claims are based upon an independent legal duty, but Mr. Garcia made no argument for a finding of an independent legal duty separate from ERISA supporting the claims for wrongful termination or prima-facie tort.  Mr. Garcia later,

once again, practically conceded that the wrongful-termination and prima-facie-tort claims, stating:

"So ultimately -- you know, if Your Honor instructs us, we would amend the Complaint to have an

ERISA claim and then we would have two separate state law counts under the New Mexico Human

Rights Act, which would be independent of that ERISA claim and not be predicated on a benefits-

defeating motive."  Tr. at 11:20-25 (Garcia).

## A.   ERISA COMPLETELY PREEMPTS RUBY'S WRONGFUL-TERMINATION CLAIM.

Sandia Labs argues that ERISA completely preempts Ruby's wrongful-termination claim

because it relies entirely and exclusively on the allegation that Sandia Labs terminated Ruby to

prevent him from obtaining the full measure of his retirement benefits.  Ruby's third claim for

wrongful termination states:

> 70.   Sandia terminated Dr. Ruby's employment to prevent him from receiving a full retirement services pension.

> 71.   At the time of his termination, Dr. Ruby had worked at Sandia for more than two decades, and he was less than three years from receiving a full retirement service pension.  Further, as a result of his wrongful termination, Dr. Ruby lost the ability to purchase low cost health insurance through Sandia and all life insurance benefits.

> 72.   Sandia's termination of Dr. Ruby contravenes sound public policy considerations furthered by the NMHRA, ERISA, and applicable common law principles protecting the rights of private sector employees with regard to retirement benefits, and applicable case law.

> 73.   Through his wrongful termination claim, Dr. Ruby is neither raising a cause of action under ERISA or any other federal law and references ERISA solely to set forth one of the public policy's underlying his claim for wrongful termination.

> 74.   Sandia's actions constitute the common law tort of wrongful discharge.

Complaint ¶¶ 70-74, at 11.  Although Ruby pleads that he is not raising a cause of action under

ERISA, the Court agrees with Sandia Labs that Ruby's wrongful-termination claim pleads only one

motive -- deprivation of his retirement benefits.  See Turgeau v. Admin. Review Bd., 446 F.3d 1052, 1061 (10th Cir. 2006)(finding that "it is irrelevant what law the plaintiff cited in his state complaint, once the court decided that his purported state claim was completely preempted by and actually arose under federal law.").

First, the claim, as pled, falls within the scope of § 510 of ERISA, which makes it unlawful for an employer to terminate a retirement-plan beneficiary for the purpose of interfering with the attainment of his retirement benefits.  See 29 U.S.C. § 1140 (§ 510 of ERISA).  Section 502(a)(1)(B) of ERISA, the exclusive remedy for violations of §510,  provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  28 U.S.C. § 1132(a)(1)(B)(§  502(a)(1)(B) of ERISA).  The Supreme Court has held that ERISA preempts common law claims, as well as claims arising from state statutory schemes governing employee benefit plans.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). Ruby's state common-law wrongful-termination claim is almost identical to the plaintiff's state common-law wrongful-termination claim in Ingersoll-Rand Co. v. McClendon.  The Supreme Court found that ERISA completely preempted Texas' common-law wrongful termination cause of action and stated that the wrongful-termination claim was "prototypical of the kind Congress intended to cover under ERISA § 510."  498 U.S. at 143.  The Supreme Court held that, "when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 510 of ERISA, due regard for the federal enactment requires that state jurisdiction must yield."  Ingersoll-Rand Co. v. McClendon, 498 U.S. at 145.

Second, as pled, Ruby's claim for wrongful termination has not asserted a legal duty Sandia Labs had to Ruby independent from ERISA.  Wrongful-termination claims are meant to protect

employees from breaches in public policy.  See Salazar v. Furr's, Inc., 629 F. Supp. at 1409.  Ruby explicitly states in his wrongful-termination claim the public policy he believes was violated: "Sandia's termination of Dr. Ruby contravenes sound public policy considerations furthered by the NMHRA, ERISA, and applicable common law principles protecting the rights of private sector employees with regard to retirement benefits, and applicable case law."  Complaint ¶ 72, at 11 (emphasis added).  Even construing this in the light most favorable to Ruby, the Court believes that the only motive implicated in the wrongful-termination claim is a benefits-defeating motive.  Unlike his claims under the NMHRA, Ruby does not plead an independent legal duty separate from the duties that arise under ERISA.  Ruby has pled that, as a result of his wrongful termination, he was prevented from receiving his retirement and health benefits.  The Court finds that ERISA completely preempts Ruby's wrongful-termination claim.  Ruby's completely preempted claim will therefore become a federal ERISA claim and is a proper basis for removal jurisdiction.  See Schmeling v. Nordam, 97 F.3d at 1342 (holding that complete preemption is "a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.").

### B.    ERISA COMPLETELY PREEMPTS RUBY'S PRIMA-FACIE-TORT CLAIM.

Similar to its argument that ERISA completely preempts Ruby's wrongful-termination claim, Sandia Labs also argues that ERISA completely preempts Ruby's prima-facie-tort claim because it relies entirely and exclusively on the allegation that Sandia Labs terminated Ruby to prevent him from obtaining the full measure of his retirement benefits.  Ruby's fourth claim for prima-facie tort states:

76.     In firing Dr. Ruby, Defendant Sandia acted to intentionally prevent Dr. Ruby from obtaining the full measure of retirement benefits.

77.     Sandia acted with the intent to deprive Dr. Ruby from obtaining such benefits and thereby acted willfully to injure him.

78.     Dr. Ruby suffered injury as a result of Sandia's actions in the form of lost benefits.

79.     Sandia is without justification for its actions.

Complaint ¶¶ 76-79, at 11.  Ruby argues that ERISA does not completely preempt his claim for prima-facie tort because the claim has only an incidental effect on the beneficiary-administrator relationship with an ERISA plan.  See Response to Motion to Dismiss at 16.  This argument, however, only counters a finding of express preemption under § 514.  Ruby has not put forth an argument that ERISA does not completely preempt his prima-facie-tort claim.

According to the Supreme Court of New Mexico, a cause of action for prima-facie tort exists only when the defendant's acts meet the following elements: (i) an intentional unlawful act; (ii) committed with the intent to injure the plaintiff; (iii) causing injury to the plaintiff; and (iv) the absence of justification for the injurious act.  See Grover v. Stechel, 132 N.M. at 145, 45 P.3d at 85.  Ruby has properly pled the elements of prima-facie tort.  The Court notes, however, that the sole injury that Ruby pleads is deprivation of his retirement benefits and the sole intent he asserts in this cause of action is to prevent Ruby from obtaining his benefits.  Construing the Complaint in the light most favorable to Ruby, the only motive pled in his prima-facie-tort claim is a benefits-defeating motive.  In none of the briefing or in the hearing did Ruby argue otherwise. Like his claim for wrongful termination, his prima-facie-tort claim comes within the ambit of § 510 and the accompanying civil-enforcement mechanism in § 502.  As pled, his exclusive remedy for the injury he asserts in this claim is under § 502, which completely preempts his prima-facie-tort claim.

Ruby's completely preempted claim will therefore become a federal ERISA claim.

**V.    THE COURT WILL EXERCISE SUPPLEMENTAL JURISDICTION OVER RUBY'S NMHRA CLAIMS.**

The complete preemption of Ruby's claims for wrongful termination and prima-facie tort converts those claims into federal ERISA claims, and the Court may properly exercise jurisdiction over this case.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."); Metro. Life Ins. Co. v. Taylor, 481 U.S. at 65-66 (explaining that complete preemption under ERISA "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."); Schmeling v. Nordam, 97 F.3d at 1342.  ERISA does not completely preempt Ruby's claims under the NMHRA for age discrimination and retaliation.  At the hearing, the Court discussed with the parties the possibility of remanding some but not all of the claims, if the Court determined that some but not all are preempted.  See, e.g., Schoen v. Presbyterian Health Plan, Inc., No. CIV 08-0687, 2009 U.S. Dist. LEXIS 49709, at *26 (D.N.M. Feb. 19, 2009)(Browning, J.)(remanding the plaintiff's petition for review from an administrative order and retaining jurisdiction over preempted claims for unfair insurance practices and improper retention of premiums).   The parties both requested that, if the Court finds that some, but not all, of Ruby's claims are preempted, the Court exercise supplemental jurisdiction over the surviving state claims, rather than remanding some claims to state court and not others.

A state claim can also be removed using supplemental jurisdiction, provided that another claim in the Complaint is removable.  See 28 U.S.C. § 1367(a).  Because the Court has proper jurisdiction over the converted ERISA claim, the Court may exercise supplemental jurisdiction over

Ruby's surviving state-law claims.  Ruby's NMHRA age-discrimination and retaliation claims survive Sandia Labs' motion to dismiss, and the Court will exercise supplemental jurisdiction over those claims.  The Court, therefore, denies Ruby's Motion to Remand.

## VI.    THE COURT DENIES SANDIA LABS' MOTION TO DISMISS AND GRANTS RUBY LEAVE TO AMEND HIS COMPLAINT.

Sandia Labs has moved to dismiss each of Ruby's claims for failure to state a claim upon which relief can be granted because ERISA completely preempts the claims.  The Court has found that ERISA completely preempts Ruby's wrongful-termination claim and prima-facie-tort claim, which has the effect of converting those claims into a federal ERISA claim.  Metro. Life Ins. Co. v. Taylor, 481 U.S. at 65-66 (explaining that complete preemption under ERISA "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."); Schmeling v. Nordam, 97 F.3d at 1342.  In its motion, Sandia Labs contends that, when ERISA completely preempts state-law claims, "dismissal of the case is generally not warranted," and states that the Court should permit Ruby the opportunity to amend his Complaint to frame his preempted causes of action under the ERISA's civil-enforcement provisions. Motion to Dismiss at 7.

In Lafayette v. Cobb, 385 F. Supp. 2d 1152 (D.N.M. 2004), the Honorable C. LeRoy Hansen, Senior United States District Judge for the District of New Mexico, denied the defendant's motion to dismiss the plaintiff's state-law breach-of-contract claim because ERISA completely preempted it.  See 385 F. Supp. 2d at 1160.  Judge Hansen stated:

> It seems that the Defendant Standard's motions to dismiss would likely have been well taken in the state court because the Plaintiff's state law causes of action have been preempted by ERISA. Having removed the case to this Court, however, Defendant Standard cannot have its cake and eat it too. This Court has subject matter jurisdiction because the civil enforcement provisions of § 502(a) of ERISA convert state claims into federal causes of action.  Aetna Health Inc. [v. Davila],

124 S. Ct. at 2496.  It would be anomalous indeed to permit a defendant to both remove a case to federal court because the state law cause of action has been converted into a federal claim and then have it dismissed because the area of law into which the plaintiff's claims fall have been preempted by federal law.  One or the other result is perfectly reasonable, and in fact required by the precedent.  Both at once, however, would defy both logic and equity.

Lafayette v. Cobb, 385 F. Supp. 2d at 1060.  Judge Hansen held that, because the plaintiff's breach-of-contract claim was subject to complete preemption, and thus converted into a § 502 ERISA claim, the claim "stat[ed] a claim upon which relief can be granted under that section, to the extent that those benefits are due under the contract," and thus denied the defendant's motion to dismiss the claim.  385 F. Supp. 2d 1060.  See Coleman v. Prudential Ins. Co. of Am., No. 05-cv-0493, 2006 U.S. Dist. LEXIS 32214, at **6-7 (N.D. Okla. May 19, 2006)("[T]he Court denies defendant's motion to dismiss plaintiff's first claim and treats it as a claim brought pursuant to section 1132, whether that was plaintiff's initial intent or not."); Nadworny v. Shaw's Supermarkets, Inc., 405 F. Supp. 2d 124, 139 (D. Mass. 2005)(denying the defendant's rule 12(b)(6) motion to dismiss on state-law claims completely preempted by ERISA's civil enforcement provision and permitting the plaintiff to amend the complaint).

Because ERISA completely preempts Ruby's wrongful-termination and prima-facie-tort claims, they are converted into a § 502 claim, and, therefore, the Court finds that Ruby has pled a claim upon which relief can be granted.  The Court also finds that Ruby has properly pled claims for age-discrimination and retaliation under the NMHRA upon which relief can be granted.  The Court, therefore, dismisses Sandia Labs' motion to dismiss.  Because Sandia Labs has argued that the Court should permit Ruby the opportunity to amend his Complaint to frame his preempted causes of action under the ERISA's civil-enforcement provisions, the Court will grant Ruby leave to amend his Complaint to re-frame his preempted claims under § 502.  See Nechero v. Provident

Life & Accident Ins. Co., 795 F. Supp. 374, 381 (D.N.M. 1992); Termini v. Life Ins. Co. of N. Am., 464 F. Supp. 2d 508, 519 (E.D. Va. 2006).

In his Response, Ruby also expressed a desire to amend his Complaint to add additional claims, as he has recently received a right to sue letter from the Equal Employment Opportunity Commission permitting him to sue under Title VII, the ADEA, and the Equal Pay Act of 1963, 29 U.S.C. §206(d).  See Response at 20.  Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).   Because Ruby's complaint has been properly removed to federal court, the Court finds that granting Ruby leave to amend his Complaint to add additional federal and/or state claims is appropriate and in the interests of justice.  See Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993);  Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court");  Burleson v. ENMR-Plateau Tel. Co-op., No. Civ. 05-0073, 2005 U.S. Dist. LEXIS 39145, at *2 (D.N.M. Sept. 23, 2005)(Browning, J.)("Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim.")(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).  The Court will give Ruby ten days from the filing of this Order to amend his state-law claims for wrongful termination and prima-facie tort to properly frame his causes of action to comply with ERISA's civil-enforcement provisions, and to add any additional state and/or federal claims.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) is denied.  Claim III and Claim IV of the Plaintiff's Complaint for Damages Arising Under the New Mexico Human Rights Act and New Mexico Common Law  are converted into a federal

ERISA claim, and the Court treats Claims III and IV as an ERISA claim pursuant to the civil

enforcement provision, 29 U.S.C. § 1132.  The Plaintiff shall have ten days from the filing of this

Order to amend his state-law claims for wrongful termination and prima-facie tort to properly frame

his causes of action to comply with ERISA's civil-enforcement provision.  The Plaintiff's Motion

to Remand is denied.  The Court also grants the Plaintiff leave to amend his complaint to add

additional state and/or federal claims.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Matthew L. Garcia
Matthew L. Garcia Attorney at Law LLC
Albuquerque, New Mexico

-- and --

Philip B. Davis
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Luis G. Stelzner
Kim A. Griffith
Jaime L. Dawes
Sheehan, Sheehan & Stelzner, P.A.
Albuquerque, New Mexico

       *Attorneys for the Defendant*